# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**MICHELLE MAUREEN MARCISZ,**

    **Plaintiff,**

**v.**                **Case No:   6:18-cv-2088-Orl-37LRH**

**COMMISSIONER OF SOCIAL
SECURITY,**

     **Defendant.**

_____

# REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

Michelle Maureen Marcisz (Claimant) appeals the Commissioner of Social Security's final decision denying her application for disability benefits.  (Doc. 1).  The Claimant raises several arguments challenging the Commissioner's final decision and, based on those arguments, requests that the matter be reversed and remanded for an award of benefits or, in the alternative, further proceedings.  (Doc. 22 at 11-17, 21-26, 28-30, 33).  The Commissioner argues that the Administrative Law Judge (ALJ) committed no legal error and that his decision is supported by substantial evidence and should be affirmed.  (*Id*. at 17-21, 26-28, 30-33).  Upon review of the record, the undersigned respectfully **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**.

## I.  Procedural History

This case stems from the Claimant's application for disability insurance benefits (DIB).  (R. 177-78).  The Claimant alleged a disability onset date of February 8, 2013.  (R. 177).  The Claimant's application was denied on initial review and on reconsideration.  The matter then

proceeded before an ALJ, who held a hearing, which was attended by the Claimant and her representative.  (R. 36-68).   On March 8, 2018, the ALJ entered a decision denying the Claimant's application for disability benefits.  (R. 15-29).   The Claimant requested review of the ALJ's decision, but the Appeals Council denied her request.  (R. 1-3).   This appeal followed.

## II.    The ALJ's Decision

The ALJ found that the Claimant's date last insured was December 31, 2015.  (R. 18).   This is significant because a claimant seeking DIB is eligible for such benefits where she demonstrates disability on or before her date last insured.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).   Therefore, the Claimant was required to demonstrate that she became disabled sometime between her alleged onset date and December 31, 2015.  *Id*.

The ALJ found that the Claimant suffered from the following severe impairments during the relevant period: migraine headache disorder; a history of vertigo; bilateral shoulder degenerative joint disease; and a mental impairment variously diagnosed as a depressive disorder and an anxiety disorder.  (R. 18).   The ALJ also found that the Claimant suffered from the following non-severe impairments: carpal tunnel syndrome; irritable bowel syndrome (IBS); diverticulosis; obesity; chronic fatigue syndrome; insomnia; and low back pain.  (R. 18-19).   The ALJ, however, determined that the Claimant did not have an impairment or combination of impairments that met or medically equaled any listed impairment.  (R. 20-22).

The ALJ proceeded to find that the Claimant had a residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b)[1] during the relevant period, with the

---

[1] Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of

following additional limitations:

> [Claimant] would not be able to climb ladders, ropes, or scaffolds and would also be limited to performing all other postural activities on an occasional basis (climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling); could also frequently reach overhead with the bilateral upper extremities; would also need to avoid concentrated exposure to hazards, such as unprotected heights and/or dangerous machinery, and also noise of a moderate or greater level in the workplace; would also be limited to no greater than unskilled work duties as would be consistent with an SVP of 1 to 2 but no greater than 2; and lastly, would not be expected to have greater than occasional interaction with coworkers, supervisors, or members of the public.

(R. 22).  In light of this RFC, the ALJ found that the Claimant was unable to perform her past relevant work.  (R. 27).  However, relying on the VE's testimony from the hearing, the ALJ found that the Claimant was capable of performing other work in the national economy, including work as a garment sorter, electronics worker, and shoe packer.  (R. 27-28).  Accordingly, the ALJ concluded that the Claimant was not disabled between her alleged onset date, February 8, 2013, through her date last insured, December 31, 2015.  (R. 28).

**III.    Standard of Review**

The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings of fact are supported by substantial evidence.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining

---

these activities."  20 C.F.R. § 404.1567(b).

whether the decision is supported by substantial evidence. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm it if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

IV.    **Analysis**

The Claimant raises the following assignments of error: 1) the ALJ erred by assigning no significant weight to portions of the opinion of Dr. Guillermo Mendoza-Fonseca, the Claimant's treating physician; 2) the ALJ's hypothetical question to the vocational expert (VE) did not include or account for all of the Claimant's functional limitations; and 3) the ALJ failed to offer specific reasons in support of his credibility determination. (Doc. 22 at 11-17, 21-26, 28-30). The undersigned will address each assignment of error in turn.

A.  **Dr. Mendoza-Fonseca's Opinion**

The Claimant contends that the ALJ ignored evidence in the record which supports Dr. Mendoza-Fonseca's opinion, and instead improperly cherry-picked other evidence to support the ALJ's decision to assign no significant weight to portions of Dr. Mendoza-Fonseca's opinion. (Doc. 22 at 13-14). Therefore, the Claimant argues that the ALJ failed to provide "adequate reasons" to assign no significant weight to portions of Dr. Mendoza-Fonseca's opinion. (*Id*. at 17).

In response, the Commissioner argues that the ALJ properly considered all the evidence of record and did not cherry-pick evidence when weighing Dr. Mendoza-Fonseca's opinion. (*Id*. at 21). Further, the Commissioner argues that the ALJ articulated good cause reasons, which were supported by substantial evidence, for assigning select portions of Dr. Mendoza-Fonseca's opinion no significant weight. (*Id*. at 18-21).

The ALJ is tasked with assessing a claimant's RFC and ability to perform past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). The RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis*, 125 F.3d at 1440. In determining a claimant's RFC, the ALJ must consider all relevant evidence, including the medical opinions of treating, examining and non-examining medical sources, as well as the opinions of other sources. *See* 20 C.F.R. § 404.1545(a)(3); *see also Rosario v. Comm'r of Soc. Sec.*, 490 F. App'x 192, 194 (11th Cir. 2012).[2]

The ALJ must consider a number of factors in determining how much weight to give each medical opinion, including: 1) whether the physician has examined the claimant; 2) the length, nature, and extent of the physician's relationship with the claimant; 3) the medical evidence and explanation supporting the physician's opinion; 4) how consistent the physician's opinion is with the record as a whole; and 5) the physician's specialization. 20 C.F.R. § 404.1527(c).

A treating physician's opinion must be given controlling weight, unless good cause is shown to the contrary. 20 C.F.R. § 404.1527(c)(2) (giving controlling weight to the treating physician's opinion unless it is inconsistent with other substantial evidence); *see also Winschel*, 631 F.3d at 1179. There is good cause to assign a treating physician's opinion less than controlling weight where: 1) the treating physician's opinion is not bolstered by the evidence; 2) the evidence supports a contrary finding; or 3) the treating physician's opinion is conclusory or inconsistent with the physician's own medical records. *Winschel*, 631 F.3d at 1179.

The ALJ must state the weight assigned to each medical opinion, and articulate the reasons supporting the weight assigned. *Id*. The failure to state the weight with particularity or articulate

---

[2] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority. *See* 11th Cir. R. 36-2.

the reasons in support of the assigned weight prohibits the Court from determining whether the ALJ's ultimate decision is rational and supported by substantial evidence. *Id.*

The Claimant began treating with Dr. Mendoza-Fonseca, a primary care physician, in April 2014. (R. 569-73). The Claimant treated with Dr. Mendoza-Fonseca on thirteen occasions between April 2014 and July 2015. (R. 393-98, 420-27, 441-48, 470-75, 490-95, 512-16, 538-46, 569-73, 588-92, 598-612).[3] During this time, the Claimant reported various issues, including feeling anxious and/or depressed (R. 421, 512, 569, 588, 598, 603), migraines (R. 512), and joint, neck, and/or back pain (R. 512, 538, 598). There were also times when the Claimant reported feeling well or improvement in her condition. (R. 394, 442, 471, 583, 608). The Claimant's physical examinations were routinely unremarkable, with the only exception occurring during her July 2014 visit, at which Dr. Mendoza-Fonseca observed erythematous plaques on the Claimant's feet. (R. 398, 425, 447, 474-75, 494, 515, 544-45, 571-72, 586, 591, 601, 605-06, 611). Dr. Mendoza-Fonseca diagnosed the Claimant with anxiety, depression, IBS, migraines/headaches, fatigue, and trapezius muscle spasms on multiple occasions. (R. 398, 426, 448, 475, 494, 515, 545, 572, 591, 606, 611). Dr. Mendoza-Fonseca also diagnosed the Claimant with the following impairments only once: gastritis (R. 572), tinea pedis (R. 475), adjustment insomnia (R. 611), fibromyalgia (R. 601), chronic arthralgias of the knees and hips (*Id.*), bipolar 2 disorder (R. 586), abnormal liver function test (*Id.*), and vitamin B12 deficiency (*Id.*).

More than two years after the Claimant last treated with Dr. Mendoza-Fonseca, in January 2018, Dr. Mendoza-Fonseca completed an RFC assessment. (R. 721-23). In it, Dr. Mendoza-Fonseca opined that the Claimant: could sit and stand for eight hours in an eight-hour workday;

_____

[3] The record does not contain any treatment records from Dr. Mendoza-Fonseca dated after July 2015 through the date last insured, December 31, 2015.

could occasionally lift up to five pounds, but never lift more than five pounds; could not perform simple grasping with her bilateral upper extremities; could manipulate and push and pull objects with her upper extremities; had no limitations in her lower extremities; and needed complete freedom to lie down and rest for substantial periods of time during the day.  (R. 721-22).  Dr. Mendoza-Fonseca further opined that the foregoing limitations were present at least as of February 8, 2013 and throughout the relevant period.  (R. 722-23).

In addition to the foregoing, at the conclusion of the RFC assessment, Dr. Mendoza-Fonseca wrote that the "[b]asic reason of her disability is due to psychiatric pathology, and psychologist should be consulted."  (R. 723).  Immediately underneath the foregoing statement, Dr. Mendoza-Fonseca wrote: "based on patient's answers."  (*Id.*).  From this statement, he appears to draw a line to his previous statement about the cause of the Claimant's disability.  (*Id.*).  Ultimately, it is unclear whether Dr. Mendoza-Fonseca was stating that his entire RFC assessment was based on the Claimant's subjective reports or whether only his statement about the primary cause of the Claimant's disability was based on the Claimant's subject reports.  (*See* R. 721-23).

The ALJ considered Dr. Mendoza-Fonseca's opinion and assigned "no significant weight" to his opinion that the Claimant was limited to lifting no more than five pounds, was unable to grasp bilaterally, and needed unlimited rest periods during the day.  (R. 25).  In support, the ALJ explained:

> While Dr. Mendoza Fonseca is a treating provider and his opinions deserve significant consideration, these opinions are clearly inconsistent with the doctor's examination findings during the relevant period (Exhibit B12F) and other examination in the record, as described below.  The provider also admits in the questionnaire that the restrictions were based on the claimant's answers.

(*Id*.).  Following the foregoing explanation, the ALJ discussed various treatment records from emergency room visits and Dr. Mendoza-Fonseca from the relevant period that supported his reasoning.  (R. 25-26).

The ALJ, however did not discuss every single treatment record from the relevant time period, and this is the claim of error raised by the Claimant.  However, it is axiomatic that the ALJ need not discuss every piece of evidence when evaluating the claimant's RFC.  *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [the district court . . . ] to conclude that [the ALJ] considered her medical condition as a whole." (internal quotation marks omitted)).  Here, considering the ALJ's detailed discussion of the treatment notes, the undersigned is not persuaded that the ALJ cherry-picked evidence to support the weight he assigned to select portions of Dr. Mendoza-Fonseca's opinion.  Instead, it appears that the ALJ thoroughly considered the evidence from the relevant period when weighing Dr. Mendoza-Fonseca's opinion.  Therefore, the Claimant's argument that the ALJ cherry-picked evidence is unpersuasive.[4]

The argument that the ALJ did not provide "adequate reasons" to assign select portions of Dr. Mendoza-Fonseca's opinion no significant weight is also unpersuasive.  First, the proper inquiry is not whether the ALJ stated "adequate reasons," but whether he stated good cause reasons,

---

[4] The Claimant points to two treatment notes from Dr. Mendoza-Fonseca that the ALJ did not expressly discuss in his decision.  (Doc. 22 at 14 (citing R. 598, 603)).  The Claimant notes that these treatment records described her complaining about being anxious, depressed, and having pain throughout her body.  (*Id*.).  By pointing this out, the Claimant seemingly argues that such evidence supports Dr. Mendoza-Fonseca's opinion.  (*See id*.).  However, the Claimant's subjective reports do not necessarily support the opinions from Dr. Mendoza-Fonseca that the ALJ rejected.  Moreover, the treatment notes that the Claimant points to also tend to support the weight the ALJ assigned to Dr. Mendoza-Fonseca's opinion because, as the ALJ noted in his decision, the physical examinations during those visits were unremarkable.  (R. 601, 605).

supported by substantial evidence, to assign less than significant weight to portions of Dr. Mendoza-Fonseca's opinion. *Winschel*, 631 F.3d at 1179. The undersigned finds that he did. The ALJ found that Dr. Mendoza-Fonseca's opinions that the Claimant was limited to lifting no more than five pounds, was unable to grasp bilaterally, and needed unlimited rest periods during the day were inconsistent with his and other physicians' examinations. (R. 25). In support, the ALJ discussed treatment records from the emergency room and Dr. Mendoza-Fonseca dated from the relevant period, noting that Claimant's physical examinations were routinely unremarkable. (R. 25-26). It was reasonable to conclude that such evidence is inconsistent with Dr. Mendoza-Fonseca's opinions that the Claimant could not lift more than five pounds, was unable to grasp bilaterally, and needed unlimited rest periods during the day. Accordingly, the undersigned finds that the ALJ articulated good cause, supported by substantial evidence, to assign portions of Dr. Mendoza-Fonseca's opinion no significant weight.

The ALJ also assigned portions of Dr. Mendoza-Fonseca's opinion no significant weight because, to him, it appeared that all of Dr. Mendoza-Fonseca's opinions were based on the Claimant's subjective reports. (R. 25). As discussed above, it is unclear whether Dr. Mendoza-Fonseca was indicating that his entire RFC assessment was based on the Claimant's subjective reports or whether only his statement about the primary cause of the Claimant's disability was based on the Claimant subject reports. Thus, while the ALJ's interpretation of Dr. Mendoza-Fonseca's RFC assessment is plausible, the undersigned cannot determine whether the ALJ's second reason is supported by substantial evidence due to the ambiguity of Dr. Mendoza-Fonseca's RFC assessment. Despite this issue, the ALJ, as discussed above, did articulate a good cause reason to assign portions of Dr. Mendoza-Fonseca's opinion no significant weight, and that is all that was required of him to do so. *Winschel*, 631 F.3d at 1179. Therefore, the issue with the ALJ's second reason is of no

consequence in determining whether the ALJ articulated good cause, supported by substantial evidence, for the weight he assigned to Dr. Mendoza-Fonseca's opinion.

In light of the foregoing, the undersigned recommends that the Court reject the Claimant's first assignment of error.

### B.  The VE's Testimony

The Claimant contends that the ALJ's hypothetical to the VE was not supported by substantial evidence because: 1) the ALJ erred in weighing Dr. Mendoza-Fonseca's opinion; and 2) the ALJ did not include or account for the Claimant's moderate limitation in pace.  (Doc. 22 at 22-25).  As a result, the Claimant argues that the ALJ erroneously relied on the VE's testimony in determining that he could perform other work in the national economy.  (*Id*. at 25-26).

In response, the Commissioner contends that the "ALJ's RFC finding and hypothetical question to the VE accounted for the rating of moderate difficulties in maintaining concentration, persistence, or pace."  (*Id*. at 26-28).  In addition, the Commissioner contends that the Claimant has failed to show that her impairments caused limitations (including limitations in pace) beyond those in the ALJ's RFC determination and hypothetical to the VE.  (*Id*.).  For these reasons, the Commissioner argues that the ALJ did not err by relying on the VE's testimony in determining that he could perform other work in the national economy.  (*Id*.).

The ALJ may consider the testimony of a vocational expert in determining whether the claimant can perform other jobs in the national economy.  *Phillips*, 357 F.3d at 1240.  To do so, the ALJ is required to pose hypothetical questions that are accurate and that include all of the claimant's functional limitations.  *See Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985).  The ALJ, however, is not required to include "each and every symptom" of the claimant's impairments, *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007), or

"findings . . . that the ALJ . . . properly rejected as unsupported" in the hypothetical question, *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004). Where the ALJ relies on the vocational expert's testimony, but fails to include all the claimant's functional limitations in the hypothetical question, the final decision is not supported by substantial evidence. *See Pendley*, 767 F.2d at 1562 (quoting *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).

The Claimant's first argument challenging the ALJ's reliance on the VE's testimony hinges on the outcome of her first assignment of error. (Doc. 22 at 22-23). As discussed above, the undersigned finds that the ALJ did not error in assigning no significant weight to portions of Dr. Mendoza-Fonseca's opinion. (*See supra* pp. 4-9). Accordingly, it follows that the Claimant's first argument is unavailing.

The Claimant's second argument focuses on the ALJ's determination that the Claimant has moderate limitations in concentration, persistence, or pace. (Doc. 22 at 23-25). Specifically, the Claimant argues that the ALJ's RFC determination and hypothetical to the VE did not include or account for her moderate limitation in pace and, as a result, the ALJ erred by relying on the VE's testimony. (*Id.*). The undersigned disagrees.

If a claimant is found to suffer moderate limitations in maintaining concentration, persistence, or pace, the ALJ must either "indicate that medical evidence suggested [that claimant's] ability to work was unaffected by [those] limitation[s]," or include those limitations, either explicitly or implicitly, in the hypothetical question(s) posed to the VE. *Winschel*, 631 F.3d at 1181. In the RFC, the ALJ can account sufficiently for moderate limitations in maintaining concentration, persistence or pace by including a restriction to simple or routine tasks, if the medical evidence demonstrates that the claimant has the ability to perform those tasks despite such limitations. *See, e.g.*, *Timmons v. Comm'r of Soc. Sec.*, 522 F. App'x 897, 907-08 (11th Cir. 2013); *Jacobs v. Comm'r*

*of Soc. Sec.*, 520 F. App'x 948, 950-51 (11th Cir. 2013); *Washington v. Soc. Sec. Admin., Comm'r*, 503 F. App'x 881, 883 (11th Cir. 2013).

The ALJ considered medical, opinion, and testimonial evidence concerning the Claimant's mental impairments. (R. 23-26). Among that evidence, the ALJ considered the opinions of two non-examining psychologists, each of whom found that the Claimant had, among other things, moderate limitations in concentration, persistence, or pace. (R. 137, 151).[5] The psychologists ultimately opined that the Claimant has the following mental RFC:

> [The] claimant can understand, retain, and carry out simple instructions, along with being able to perform [simple, routine, repetitive tasks] and some complex tasks. Claimant can consistently and usefully perform routine tasks on a sustained basis, with minimal (normal) supervision, and can cooperate effectively with public and co-workers in completing simple tasks and transactions. Claimant is able to adequately adapt to changes and demands of simple tasks.

(R. 138, 152). Notably absent from the psychologist's opinions (and the medical record as a whole) is a limitation related specifically to pace, such as no quota work.

The ALJ assigned the psychologists' opinions significant weight. (R. 24). This evidence supports the ALJ's determination that the Claimant can perform "unskilled work . . . consistent with

---

[5] The ALJ mistakenly stated that the state agency psychologists found the Claimant had mild limitations in concentration, persistence, or pace. (R. 24). An ALJ's misstatement of fact is harmless if it does not affect the ALJ's ultimate decision. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983). If the ALJ makes a misstatement of fact that is material or integral to the ALJ's ultimate decision, then the misstatement is not harmless, and remand may be warranted. *See, e.g.*, *Bissinger v. Comm'r of Soc. Sec.*, No. 6:13-cv-1602-Orl-31GJK, 2014 WL 5093981, at *5-6 (M.D. Fla. Oct. 9, 2014) (finding that a misstatement of fact is not harmless if the misstatement is material or integral to the ALJ's ultimate decision). Here, the misstatement is harmless, because the ALJ ultimately reached the same conclusion as the psychologists, *i.e.*, that the Claimant has moderate limitations in concentration, persistence, and pace. (R. 24). Further, despite the misstatement, the ALJ went on to assign significant weight to the functional limitations assessed by each of the state agency psychologists and accounted for those limitations in the RFC determination. (R. 22, 24). In light of the foregoing, the undersigned finds that the ALJ's misstatement did not affect his ultimate decision.

an SVP of 1 to 2"[6] (R. 22) despite her moderate limitations in maintaining concentration, persistence, or pace. *See Washington*, 503 F. App'x at 883 ("Because the evidence showed that [claimant] could perform simple, routine tasks, the ALJ's hypothetical question to the VE which included this limitation adequately addressed [claimant's] limitations as to concentration, persistence, or pace."); *Garcia v. Comm'r of Soc. Sec.*, No. 6:12-cv-452-Orl-DAB, 2013 WL 2290556, at *5 (M.D. Fla. May 24, 2013) (finding ALJ's inclusion of simple routine tasks in her hypothetical to the VE fully accounted for claimant's moderate limitations in concentration, persistence, and pace, where the ALJ gave great weight to medical opinions that indicated that claimant could perform simple and routine tasks despite moderate limitations in concentration, persistence, and pace). Furthermore, the Claimant points to no other evidence showing that she has any additional pace related limitations. (*See* Doc. 22 at 23-25); *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) ("[T]he claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim.") (citations omitted). Therefore, the Claimant has failed to show that the ALJ erred by not including any pace specific limitations in his RFC determination or hypothetical to the VE. Instead, based on the evidence of record, the undersigned finds that the ALJ sufficiently accounted for the Claimant's moderate limitations in maintaining concentration, persistence, or pace in the RFC determination and hypothetical to the VE.

In light of the foregoing, the undersigned recommends that the Court reject the Claimant's

---

[6] A specific vocational preparation or "SVP" is "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." U.S. Dep't of Labor, Dictionary of Occupational Titles, Appendix C, § II (4th ed., rev. 1991). A job with an SVP of 1 and 2 equates to unskilled work under 20 C.F.R. § 416.968(a). SSR 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000). "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.968(a).

second assignment of error.

### C. Credibility

The Claimant contends that the ALJ made a boilerplate credibility determination and did not provide any specific reasons supporting his determination that the Claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms are "not entirely consistent with the medical evidence and other evidence in the record."  (Doc. 22 at 29-30).

In response, the Commissioner argues that the ALJ provided specific reasons in support of his credibility determination and that his credibility determination is supported by substantial evidence.  (*Id*. at 31-32).

A claimant may establish "disability through his own testimony of pain or other subjective symptoms."  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  A claimant seeking to establish disability through his or her own testimony must show:

> (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).  If the ALJ determines that the claimant has a medically determinable impairment that could reasonably produce the claimant's alleged pain or other symptoms, the ALJ must then evaluate the extent to which the intensity and persistence of those symptoms limit the claimant's ability to work.  20 C.F.R. § 404.1529(c)(1).  In doing so, the ALJ considers a variety of evidence, including the claimant's history, the medical records and laboratory findings, the claimant's statements, medical source opinions, and other evidence of how the pain affects the claimant's daily activities and ability to work.  *Id*. at § 404.1529(c)(1)-(3).  "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so."  *Foote*, 67 F.3d at 1561-62.  The Court will not disturb a clearly

articulated credibility finding that is supported by substantial evidence. *Id*. at 1562.

The ALJ summarized the Claimant's testimony in his decision and found that the Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. 23). The ALJ proceeded to provide specific reasons in support of his credibility determination, stating:

> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because the examinations in the records during the relevant period are not remarkable, and include documentation of normal gait, full range of motion, normal strength, and intact neurological findings. *E.g.* Exhibits B10F/3. 6; B11F/14, 36; B12F/4. Dr. Mendoza Fonseca noted in December 2014 that the claimant looked the best that he had ever seen her (Exhibit B12F/26), and in July 2015, he indicated that she was asymptomatic. Exhibit B12F/1. During this period, the claimant was also reportedly able to assist her autistic adult daughter, prepare some meals, care for pets, perform light cleaning, organize the home, talk on the phone with family, and use Facebook. *See* Exhibit B6E/2, 3, 5.

(R. 24). The foregoing excerpt demonstrates that the ALJ's credibility determination was not limited to the boilerplate credibility language found in most disability decisions. Therefore, the Claimant's argument challenging the sufficiency of the ALJ's credibility determination is unpersuasive.

Although the Claimant maintains that the ALJ did not provide specific reasons in support of his credibility determination, the Claimant does acknowledge that the ALJ considered her daily activities and may have done so in connection with his credibility determination. (Doc. 22 at 30). In acknowledging this possibility, the Claimant argues that her participation in the limited daily activities noted by the ALJ does not undermine her testimony about the effects of her impairments. (*Id*.).

The ALJ provided several specific reasons in support of his credibility determination.

Specifically, the ALJ found the Claimant's testimony was inconsistent with: 1) her physical examinations; 2) several of Dr. Mendoza-Fonseca's observations concerning the Claimant's overall condition; and 3) certain activities of daily living.   (R. 24).   The Claimant does not challenge the first and second reasons articulated by the ALJ.   (*See* Doc. 22 at 28-30).   These reasons support the ALJ's credibility determination and are supported by substantial evidence as discussed earlier in this Report.   As for the ALJ's reliance on the Claimant's activities of daily living, while some activities are relatively limited in duration and scope others do not appear to be so, such as the Claimant's care for her autistic daughter.   Under the circumstances of this case, the undersigned is not persuaded that the ALJ erred by considering and relying on the Claimant's activities of daily living in reaching his credibility determination.   In summary, the undersigned finds that the reasons articulated by the ALJ when considering the credibility of the Claimant's testimony support the ALJ's credibility determination and, are themselves, supported by substantial evidence.   *See Foote*, 67 F.3d at 156162 (reviewing court will not disturb credibility finding with sufficient evidentiary support).   Therefore, the undersigned recommends that the Court reject Claimant's third and final assignment of error.

## V.      Conclusion

Accordingly, it is respectfully **RECOMMENDED** that:

1.   The Commissioner's final decision be **AFFIRMED**.

2.   The Clerk be **DIRECTED** to enter judgment in favor of the Commissioner and against the Claimant.

3.   The case be closed.

**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on November 25, 2019.

LESLIE R. HOFFMAN
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy